8
EDMUND GEE, State Bar No. 178627
Assistant United States Trustee
JASON BLUMBERG, NY State Bar No. 4055257
Trial Attorney
UNITED STATES DEPARTMENT OF JUSTICE
Office of the United States Trustee
501 "I" Street, Suite 7-500
Sacramento, CA 95814
Telephone:  (916) 930-2100
Facsimile:  (916) 930-2099
Email:  jason.blumberg@usdoj.gov

Attorneys for TRACY HOPE DAVIS
United States Trustee for Region 17

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF CALIFORNIA
## SACRAMENTO DIVISION

In re:

**HILL TOP REAL ESTATE, LLC,**

                Debtor.

_____/

Case No. 19-27845-A-11

DC No.: FWP-2

Date: January 22, 2020
Time: 9:00 a.m.
Dept.: A
Courtroom: 28

### OBJECTION OF THE UNITED STATES TRUSTEE TO DEBTOR'S MOTION FOR ORDER AUTHORIZING EMPLOYMENT OF CHIEF RESTRUCTURING OFFICER

Tracy Hope Davis, United States Trustee for Region 17 (the "<u>UST</u>"), by and through her

undersigned counsel, hereby files this objection to the Debtor's motion (ECF No. 23) (the

"<u>Motion</u>") to employ David Carter as its chief restructuring officer, pursuant to 11 U.S.C. §§

105(a) and 363(b).  In support of her objection, the UST respectfully represents as follows:

## I.   <u>INTRODUCTION</u>

1.   Mr. Carter's proposed services include some traditionally provided by a financial advisor.  A financial advisor may be retained by a debtor in possession only if it is a disinterested person.  <u>See</u> 11 U.S.C. § 327(a).

2.   By definition, a chief restructuring officer is an officer.  Thus, upon his employment as chief restructuring officer, Mr. Carter would be an insider of the Debtor.  <u>See</u> 11 U.S.C. § 101(31)(B)(ii).  Insiders are not disinterested.  <u>See</u> 11 U.S.C. § 101(14)(A).

3.   Nevertheless, the UST would not oppose Mr. Carter's retention as chief restructuring officer, if the conditions described in Paragraph 18 of this Objection are included in any Order granting the Motion.

## II.   <u>BACKGROUND</u>

4.   The Debtor commenced this case by filing a voluntary petition for relief on December 20, 2019 (the "<u>Petition Date</u>").  <u>See</u> ECF No. 1.  The Debtor is currently a debtor-in-possession under sections 1107 and 1108 of the Bankruptcy Code.  As of yet, no official committee of unsecured creditors has been appointed in this case.

5.   The first date set for the meeting creditors under 11 U.S.C. § 341(a) in this case is January 28, 2020.  <u>See</u> ECF No. 6.

6.   The Petition in this case was signed on the Debtor's behalf by Jeffrey Von Hill.  <u>See</u> Petition (ECF No. 1), at § 17.  Dr. Von Hill is a manager of the Debtor.  <u>See id.</u>  Dr. Von Hill owns a 50% membership interest in the Debtor.  The remaining 50% is owned by Kapri Hill.  <u>See</u> ECF No. 16.

7.      According to the Motion, the Debtor owns the real property located at 1050 Iron Point Road, Folsom, California (the "V5 Medical Campus").  The V5 Medical Campus "ultimately will house six different inter-related medical practices."  See Motion, at ¶ 5.

8.      One of those practices is the existing family practice and sports medicine group referred to as "Elevation Physicians." Elevation Physicians is operated by Dr. Hill.  See Motion, at ¶ 5a.  According to the Motion, Dr. Hill is "working full time treating patients and does not have the time or the expertise to undertake all the additional requirements and duties of managing the Debtor in Chapter 11."  See Motion, at ¶ 18.

9.      According to the Motion, Mr. Carter is a 1099 employee / consultant for Steller Ventures, LLC ("Steller Ventures").  Stellar Ventures is a consulting firm working with Elevation Physicians to "develop the budget for and the capital needed to complete the development of the V5 Medical Campus."  Stellar Ventures was originally hired to assist Elevation Physicians by a potential investor - Greg Porter.  See Motion, at ¶¶ 14-15.[1]

10.     According to the Motion, Mr. Carter "is the person with the most knowledge of the books and records and documents relating to the V5 Medical Campus, and the real estate component owned by the Debtor and is crucial to the accurate completion of the Debtor's statements of financial affairs, schedules, and other required filings…. Mr. Carter is a key person working on the recapitalization plans that will allow the V5 Medical Campus to be in a position to reorganize and service its debts in a plan."  See Motion, at ¶¶ 16-17.

11.     The scope of Mr. Carter's proposed services include evaluating the Debtor's current liquidity position and expected future cash flows "including developing appropriate cash flow

---

[1]      According to the Motion, the Debtor no longer views Mr. Porter "as a potential source of new investment capital."  See Motion, at ¶ 15.

forecasting models [and] methodologies."  Mr. Carter will also perform "<u>financial services</u> as well as the required management services consistent with the services expected to be provided by a Chief Financial Officer, but not duplicative of services provided by <u>other professionals</u>."  <u>See</u> Motion, at ¶¶ 22B and 22C (emphasis added).

12.    As disclosed in the Motion and the Declaration of David Carter (ECF No. 25) (the "<u>Carter Declaration</u>"),[2] the salient terms of Mr. Carter's proposed engagement include the following:

a.    The retention would be approved pursuant to Sections 105(a) and 363(b), as opposed to Section 327.  <u>See</u> Motion, at ¶ 21.

b.    Mr. Carter would be paid $275 per hour, not to exceed 8 hours per day, plus reasonable costs and expenses.  <u>See</u> Motion, at ¶ 24.

c.    Mr. Carter would be paid a $25,000 retainer.  <u>See</u> Motion, at ¶¶ 21d, 25.  The retainer would be held in trust by Mr. Carter until the Court approves his fees and costs.  The retainer will be funded by an investment or loan, approval of which will be subject to a separate motion.  <u>See</u> Motion, at ¶ 25.[3]

d.    Mr. Carter's fees and costs will be evaluated by the Court in accordance with 11 U.S.C. §§ 330, 331, the applicable Federal Rules of Bankruptcy Procedure and U.S. Trustee Guidelines (except that time can be kept in half-hour increments).  Fees and expenses will be awarded on an interim basis until completion of services, and such fees and expenses will be subject to approval in a final fee application.  <u>See</u> Motion, at ¶ 26.

e.    As to potential connections with parties in interest, if Mr. Carter "discover[s] additional information that requires disclosure, [he] will file a supplemental disclosure with the Court."  <u>See</u> Carter Declaration, at ¶ 20e.

f.    The Debtor would obtain $1 million of director and officer liability insurance with respect to Mr. Carter.  <u>See</u> Motion, at ¶ 21e.[4]

---

[2]    A retention agreement was not filed with the Motion.  <u>See</u>, <u>e.g.</u>, ECF No. 26 (Exhibits to Motion).

[3]    No agreement currently exists to provide this funding.  <u>See</u> Motion, ¶ 25.

[4]    The Motion does not disclose the anticipated cost of this policy, or whether the policy is consistent with those provided to the Debtor's other officers.

g.  Mr. Carter will not switch to a different retention capacity during this case.  <u>See</u> Carter Declaration, at ¶ 22.

h.  Mr. Carter will not seek any "success fees, transaction fees, or other back-end fees with respect to the Debtor" during the case.  <u>See</u> Carter Declaration, at ¶ 23.

### III.  <u>OBJECTION</u>

13.  Section 327(a) of the Bankruptcy Code provides, in pertinent part, that a trustee "may employ one or more attorneys, accountants … or other professional persons, that do not hold or represent an interest adverse to the estate, <u>and that are disinterested persons</u>, to represent or assist the trustee in carrying out the trustee's duties under this title."  <u>See</u> 11 U.S.C. § 327(a) (emphasis added); <u>see also</u> <u>In re Tevis</u>, 347 B.R. 679, 687 (9th Cir. BAP 2006) ("Section 327(a) requires the application of a two-pronged test for employment of professional persons."); <u>In re Hammer</u>, 2007 WL 7540945, at *6 (B.A.P. 9th Cir. Aug. 17, 2007) ("The bankruptcy court does not have authority to allow employment of a professional in violation of Section 327 or Section 101(14).").[5]

14.  The use of section 363(b) as authority for allowing employment of chief restructuring officers who are not "disinterested persons" has been met with criticism and rejected by some bankruptcy courts. <u>See</u>, <u>e.g.</u>, <u>In re Copenhaver, Inc.</u>, 506 B.R. 757, 762 (Bankr. C.D. Ill. 2014) (internal citations omitted); <u>see also</u> <u>In re Tamarack Resort, LLC</u>, 2010 WL 4117459 at *14 (Bankr. D. Idaho, Oct. 19, 2010) (denying motion to appoint a "responsible officer," and noting that "Chapter 11 is a flexible process," but non-statutory fiduciaries like CROs are not "so easily transported into the post-bankruptcy context") (<u>citing</u> <u>In re Kobra Properties</u>, 406 B.R. 396, 400-01 (Bankr. E.D. Cal. 2009) (noting that debtor-in-possession's proposal to hire a chief restructuring officer "elicited skepticism" and was withdrawn, "because of the vagueness of the CRO concept in

_____
[5]  In a chapter 11 case, a debtor in possession has the powers and duties of a trustee. <u>See</u> 11 U.S.C. § 1107(a).

Page -5-

the context of chapter 11 … and the inability to articulate whether and to whom a CRO would owe fiduciary and loyalty duties and how those duties would contrast with the duties of a chapter 11 trustee").

15.     By definition, a chief restructuring officer is an officer.  Thus, from the moment of his employment in that capacity, Mr. Carter will be an insider.  He will not be a disinterested person under Sections 327(a) and 101(14).  See 11 U.S.C. §§ 101(14)(A) and (B), 101(31)(B)(ii) (defining "insider" as an officer of a debtor-corporation); In re Longview Aluminum, L.L.C., 657 F.3d 507, 509 (7th Cir. 2011) ("Forte first argues that the district court erred when it used the similarity approach to analogize a director of a corporation to a member of an LLC and expanded the term "director" in the definition to include members and managers of an LLC. We disagree.") (emphasis added).

16.     As discussed above, however, the scope of Mr. Carter's services suggest the possibility that he will act as an officer and as a financial advisor.  See Motion, at ¶¶ 22B and 22C; see also ¶ 9, supra.

17.     "'Generally, financial advisors, workout specialists and consultants are, for the purpose of Section 327 of the Bankruptcy Code, professionals.' … When employment is proposed for one of these positions, the procedures required by § 327 should be followed in order to further the policies of ensuring that employed persons are impartial and that the costs and administrative expenses of a case remain subject to judicial oversight." See In re Copenhaver, Inc., 506 B.R. at 762 (internal citations omitted).

///

///

18.    In light of her foregoing concerns, the UST would not oppose Mr. Carter's retention as chief restructuring officer in this case, under the following conditions:

    a.   Mr. Carter will not be retained to act in more than one of the following capacities in the case: (i) chief restructuring officer retained under 11 U.S.C. § 363; (ii) a financial advisor retained under 11 U.S.C. § 327; (iii) a claims agent/claims administrator appointed pursuant to 28 U.S.C. § 156(c) and any applicable local rules; or (iv) investor/acquirer; and upon confirmation of a Plan may only continue to serve in a similar capacity.

    b.   Once Mr. Carter is retained under one of the foregoing categories, Mr. Carter may not switch to a different retention capacity in the case.

    c.   Once retained as chief restructuring officer, Mr. Carter will act under the direction, control and guidance of the Debtor's members and shall serve at the pleasure of a majority of the Debtor's members (i.e., Mr. Carter may be removed by majority vote of the members).

    d.   Mr. Carter will not represent Mr. Porter or other potential investors in connection with the Debtor.[6]

    e.   The Debtor will not retain Stellar Ventures in this case.

    f.   The Debtor is permitted to indemnify Mr. Carter serving as its chief restructuring officer, only on the same terms as provided to the Debtor's other officers under the Debtor's operating agreement and applicable state law, along with insurance coverage under the Debtor's D&O policy (if any).

    g.   The rights of all parties, including the UST, to move for the appointment of a trustee or an examiner pursuant to 11 U.S.C. § 1104 shall be preserved.[7]

---

[6]    Such a connection would present an actual conflict of interest. See, e.g., In re Perry, 194 B.R. 875, 876 (E.D. Cal. 1996) (law firm's dual representation of trustee and general partner of an entity seeking to purchase estate assets was an "impermissible" conflict of interest).

[7]    If the Court later orders the appointment of a trustee or an examiner, the UST will comply with the requirements of 11 U.S.C. § 1104 and 11 USC. § 101(14). In re V. Savino Oil & Heating Co., Inc., 99 B.R. 518, 525 (Bankr. E.D.N.Y. 1989) ("If the court determines that a trustee should be appointed, 'then the United States trustee, after consultation with the parties in interest, shall appoint, subject to the court's approval, one disinterested person ... to serve as trustee ... in the case.'") (emphasis added); In re Corona Care Convalescent Corp., 527 B.R. 379, 381-82, 388 (Bankr. C.D. Cal. 2015) (holding that, in granting the United States Trustee's motion to appoint a Chapter 11 trustee, the United States Trustee is authorized and directed to appoint a trustee pursuant to 11 U.S.C. § 1104(d)).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## IV.    <u>CONCLUSION</u>

Based on the foregoing, the UST would not oppose the Debtor's retention of Mr. Carter as its chief restructuring officer, in this case, so long as Mr. Carter's role is limited to wearing "one hat" and the other aforementioned conditions suggested by the UST are included in any order granting the Motion.

Dated: January 17, 2020

Respectfully submitted,

TRACY HOPE DAVIS
UNITED STATES TRUSTEE

By: /s/ Jason Blumberg
JASON BLUMBERG
Trial Attorney
Office of the United States Trustee
501 "I" Street, Suite 7-500
Sacramento, CA 95814-2322
Direct Phone: (916) 930-2076
Fax: (916) 930-2099
E-mail: Jason.blumberg@usdoj.gov